UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | **INDICTMENT** |
| v. | 26 Cr. ___ |
| EMIR BALAT and IBRAHIM KAYUMI, | |
| Defendants. | |

26 CRIM 31

## COUNT ONE
### (Conspiracy to Provide Material Support and Resources to a Foreign Terrorist Organization)

The Grand Jury charges:

### Introduction

1.      On or about March 7, 2026, in Manhattan, New York, EMIR BALAT and IBRAHIM KAYUMI, the defendants, committed a terrorist attack in the name of the Islamic State of Iraq and al-Sham ("ISIS") (the "Attack"). During the Attack, BALAT and KAYUMI attempted to detonate two improvised explosive devices containing shrapnel and triacetone triperoxide ("TATP"), a highly volatile explosive material used in multiple terrorist attacks over the last decade, in a crowd gathered near Gracie Mansion, the official residence of the Mayor of New York City (the "Residence"). Before the Attack, KAYUMI stated to BALAT—in a conversation later recovered from a vehicle dashboard camera recording—that he wanted to "start terror," and BALAT described targeting the government and civilians. BALAT predicted that they were "gonna kill" up to 60 people if the area of the Attack was particularly crowded that day. After being arrested and taken into custody, BALAT pledged allegiance to ISIS and declared that he had wanted the Attack to be "even bigger" than the 2013 Boston marathon bombing, in which three

victims were killed, and KAYUMI stated that he was inspired by ISIS in conducting the Attack. Law enforcement subsequently located, among other things, a storage unit (the "Storage Unit") filled with apparent bomb-making materials used by BALAT and a notebook (the "Notebook"), left in a vehicle ("Vehicle-1") used by BALAT and KAYUMI, that outlined a potential alternative plan for an attack targeting civilians with a large vehicle.

## ISIS

2.      On or about October 15, 2004, the United States Secretary of State designated al Qaeda in Iraq ("AQI"), then known as Jam 'at al Tawid wa' al-Jahid, as a foreign terrorist organization ("FTO") under Section 219 of the Immigration and Nationality Act ("INA") and as a Specially Designated Global Terrorist ("SDGT") entity under Section l(b) of Executive Order 13224. On or about May 15, 2014, the Secretary of State amended the designation of AQI as an FTO under Section 219 of the INA and as a SDGT entity under Section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary of State also added the following aliases to the FTO listing: The Islamic State of Iraq and al-Sham ("ISIS"—which, as explained above, is how the FTO will be referenced herein), The Islamic State of Iraq and Syria, ad-Dawla al-Islamiyya fi al-Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furquan Establishment for Media Production. On or about September 21, 2015, the Secretary added the following aliases to the FTO listing: Islamic State, ISIL, and ISIS. On or about March 22, 2019, the U.S. Secretary of State added the following aliases to the FTO and SDGT listings: Amaq News Agency, Al Hayat Media Center, and Al Hayat. To date, ISIS remains a designated FTO.

3.      On or about September 21, 2014, then-ISIS spokesperson Abu Muhammad al-Adnani ("Adnani") issued a recorded statement calling for attacks against citizens—civilian or

2

military—of the countries participating in the United States-led coalition against ISIS. Adnani specifically called for suicide bombings, shootings, and vehicle attacks.

4.      ISIS members and associates make and have made public statements and issued public declarations, which, among other things, (a) proclaimed and acknowledged that acts of violence had been committed by ISIS; (b) threatened future acts of violence if ISIS's demands were not met; and (c) were intended to promote and foster the prestige and standing of ISIS. ISIS has claimed responsibility for the following terrorist attacks, among others: (i) on or about November 13 and 14, 2015, a group of attackers carried out attacks in Paris, France, which killed approximately 130 people; (ii) on or about March 22, 2016, a group of attackers carried out bombings in Brussels, Belgium, which killed at least 32 people; (iii) on or about July 14, 2016, an attacker used a truck to run over civilians in Nice, France, killing more than 80 people and injuring more than 300; (iv) on or about October 31, 2017, an attacker, later sentenced to multiple life sentences after being convicted at trial in the Southern District of New York, used a truck to run over civilians in Manhattan, New York, killing eight people and injuring several others; (v) on or about January 3, 2024, two attackers carried out bombings in Kerman, Iran, killing at least 94 people and wounding many more; and (vi) on or about March 22, 2024, a group of assailants stormed a concert hall in Moscow, Russia, killing at least 60 people and injuring over 145 others.

5.      The U.S. State Department has reported that, among other things, ISIS has committed systematic abuses of human rights and violations of international law, including indiscriminate killing and deliberate targeting of civilians, mass executions and extrajudicial killings, persecution of individuals and communities on the basis of their religion, nationality, or ethnicity, kidnapping of civilians, forced displacement of various communities and minority groups, and killing and maiming of children, rape, and other forms of sexual violence. According

to the U.S. State Department, ISIS has recruited foreign fighters from across the globe and leveraged technology to spread its violent extremist ideology and for incitement to commit terrorist acts.

### The Attack

6.     On or about March 7, 2026, a protest called "Stop the Islamic Takeover of New York City, Stop New York City Public Muslim Prayer" and a counter-protest called "Run Nazis Out of New York City" (together, the "Protests") took place outside of the Residence in Manhattan, New York.

7.     That morning, EMIR BALAT and IBRAHIM KAYUMI, the defendants, drove from Pennsylvania, where they reside, to Manhattan in Vehicle-1 and parked near the Residence. BALAT and KAYUMI then walked to the site of the Protests, and, at approximately 12:15 p.m., BALAT ignited and threw an improvised explosive device ("Device-1") toward the area where protesters were gathered. Immediately after throwing Device-1, BALAT ran to another location down the block, where KAYUMI passed BALAT a second improvised explosive device ("Device-2," and collectively with Device-1, the "Devices"). BALAT ignited and dropped Device-2 on the ground near several New York City Police Department ("NYPD") officers and then ran from the scene, jumping over a barricade in the process. NYPD officers tackled and arrested BALAT shortly thereafter, and KAYUMI was arrested nearby moments later.

8.     NYPD officers secured the Devices and transferred them into the custody of the Federal Bureau of Investigation ("FBI"). Each of the Devices was covered in heavy gray tape and was attached, at one end, to a green fuse.

### BALAT's and KAYUMI's Post-Arrest Statements about ISIS

9.     EMIR BALAT, the defendant, made statements to law enforcement after his arrest. Specifically:

      a.      In an NYPD vehicle en route to the NYPD precinct, BALAT stated, in part: "This isn't a religion that just stands when people talk bad about . . . our prophet. We take action! We take action!"; and "If I don't do it, someone else will come and do it."

      b.      After arriving at the precinct, law enforcement officers advised BALAT of his *Miranda* rights, which BALAT waived. BALAT requested a piece of paper and, after being given paper and pen, wrote: "All praise is due to Allah lord of all worlds! I pledge my allegience [sic] to the Islamic State. Die in your rage yu [sic] kuffar! Emir B."

      c.      Law enforcement officers later asked BALAT if he was familiar with the Boston Marathon bombing, and if that was what BALAT had hoped to accomplish. BALAT responded: "No, even bigger. It was only three deaths."[1]

10.      IBRAHIM KAYUMI, the defendant, also made statements to law enforcement and others after his arrest. Specifically:

      a.      After KAYUMI was arrested, and as he was waiting to be placed inside an NYPD vehicle to be transported from the scene to an NYPD precinct, an individual from the surrounding crowd yelled to KAYUMI and asked, in substance and in part, why and on whose behalf KAYUMI had done this. KAYUMI responded, in part, "ISIS."

      b.      After KAYUMI arrived at the precinct, law enforcement agents advised KAYUMI of his *Miranda* rights. KAYUMI waived his *Miranda* rights and stated, in substance and in part, that he had watched "radical content" online.

---

[1] On or about April 15, 2013, two individuals planted two homemade pressure cooker bombs that detonated near the finish line to the Boston Marathon. Three people were killed and hundreds injured in the terrorist attack.

5

**Evidence Recovered from Vehicle-1**

11.     Following the Attack, law enforcement officers found Vehicle-1, which was registered to BALAT's relative, parked on the street several blocks south of the Residence. Inside Vehicle-1, law enforcement officers recovered a long coil of green fuse, a roll of heavy-duty tape, the Notebook, and a dashboard camera containing a memory card on which approximately three days of video and audio recordings had been recorded (the "Dashcam Recordings").

12.     The Notebook contained pages of handwritten notes. One page was titled "March 3 Day 1" and listed specific next steps, including getting "keys to storage unit." Another page listed "acetone peroxide synthesis" and "TATP explosive." Other pages listed (i) ingredients and equipment for mixing explosives (for example, "hydrogen peroxide," "sulfuric acid," "glass container," "syringe," and "glass jar"), (ii) bomb components (for example, "aluminum can 6x" and "a box of bolts ect 2x"), (iii) steps and warnings for constructing a bomb (for example, "now add 25 ml of hydrogen perioxide into GC" and "DO NOT leave in open—the drier it becomes, the more sensitive to pressure, friction, and heat") and (iv) steps for "detonat[ing] a bomb with burning fuse." Another page described an apparent alternate plan for an attack by vehicle, including: (i) the "Ideal vehicle" for conducting an attack, which was to be "load bearing," "large in size," "reasonably fast," and "heavy in weight"; (ii) a list of possible "target[s]," including "festivals," "parades," "protest," and "celebrations"; and (iii) "steps to making napalm." Excerpts from the Notebook are below:

  

13.    The Dashcam Recordings captured video footage of the route that EMIR BALAT and IBRAHIM KAYUMI, the defendants, took as they traveled together from Pennsylvania to Manhattan on the morning of March 7, 2026. The Dashcam Recordings also captured BALAT and KAYUMI's detailed discussion that morning of how they would conduct the Attack, the likely outcome of the Attack, whom they were targeting, and their use of social media websites to try to locate one of their intended targets ("Individual-1"). For example:

a.    KAYUMI stated, "All I know is I want to start terror bro," and "I want to petrify these people." BALAT responded, "Just for safety, as soon as you light it, just do it as soon as possible. Because I was testing the fuses, and some just go really fast sometimes, and some just are a bit slower."

b.    BALAT asked, "Oh yeah, what do you think, are they going to remove the airplanes for us . . . over New York. Are they going to stop them. If we do the attack and the bombs go off and everything."

c.    KAYUMI stated, "First call, they're going to be like this is us targeting [Individual-1]." BALAT explained that he was targeting "the government" and "civilians also." KAYUMI replied, "Yeah, I know."

d.    BALAT stated, "what I have here is called TATP," and explained that he had "160 grams" and put "80 in both," *i.e.*, in both Devices.

e.    BALAT stated that he had "calculated it" and that "it's gonna kill about 8 to 16 people," or as many as 30 to 60 people if the area was crowded.

f.    BALAT instructed KAYUMI on how to throw the bomb and to "hide it" until BALAT gave "a sign." BALAT further explained, "I'm going to say 3, 2, 1, and I'm going

7

to take it out as fast and controlled as possible. We light it, as soon as you see it going underhand, go in his direction, trying to aim at him and at his feet. And then run to the car. Together."

g.      BALAT stated, "Just can't wait for that bomb to go off and his [*i.e.*, Individual-1's] freaking head, his body to get split in half bro, dead." KAYUMI responded, "He hasn't posted anything [on social media] yet" and "Bro, this is so cool."

h.      BALAT stated, "I'm gonna just start attacking police." And, later, BALAT stated that if the primary plan "doesn't work," they "could also throw it [a Device] in the café."

i.      BALAT discussed that they would be engaging in "martyrdom" and described having left behind a note.

### The Storage Unit

14.      Following the Attack, FBI agents searched the Storage Unit in Langhorne, Pennsylvania that EMIR BALAT, the defendant, had rented just days before the Attack.

15.      FBI agents recovered explosive residue and bombmaking supplies from inside the Storage Unit. In particular, on the floor of the Storage Unit were two bowls containing TATP residue; numerous bottles, including a bottle labeled "12% hydrogen peroxide," an ingredient of TATP; syringes; a digital scale; gloves; an open package of nuts and bolts; and glass jars similar in appearance to the ones used to build the Devices.

16.      In the center of the floor inside the Storage Unit was a piece of paper containing the handwritten words, "All praise is due to Allah!!! [D]ie in your rage ya kuffar!"

### Forensic Analysis

17.      Forensic analysis of the Devices revealed that Device-1, which EMIR BALAT, the defendant, had thrown into the crowd of protesters, consisted of a glass jar wrapped in duct tape and containing nuts, bolts, an energy drink can filled with TATP, and a fuse. TATP is a highly

sensitive primary explosive that is colloquially known as the "Mother of Satan"; is extremely sensitive to impact, friction, and heat; and has been used in multiple terrorist attacks over the last decade.

18.    Device-2, which IBRAHIM KAYUMI, the defendant, had handed to EMIR BALAT, the defendant, before BALAT dropped it on the ground near police officers, was examined and deemed similar in construction to Device-1. Forensic analysis of Device-2 further revealed that it, like Device-1 and the two bowls recovered from the Storage Unit, contained TATP.

## STATUTORY ALLEGATIONS

19.    In or about March 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, and others known and unknown, knowingly and intentionally combined, conspired, confederated, and agreed together and with each other to knowingly provide "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), to a foreign terrorist organization ("FTO"), namely, the Islamic State of Iraq and al-Sham ("ISIS"), which at all relevant times was designated as an FTO by the United States Secretary of State as an FTO, pursuant to Section 219 of the Immigration and Nationality Act ("INA"), and is currently designated as such as of the date of the filing of this Indictment.

20.    It was a part and an object of the conspiracy that EMIR BALAT and IBRAHIM KAYUMI, the defendants, and others known and unknown, would and did knowingly provide ISIS with material support or resources, including, among other things, personnel (including themselves) and services, knowing that ISIS was a designated FTO (as defined in Title 18, United States Code, Section 2339B(g)(6)), that ISIS engages and has engaged in terrorist activity (as

defined in Section 212(a)(3)(B) of the INA), and that ISIS engages and has engaged in terrorism (as defined in Section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989), in violation of Title 18, United States Code, Section 2339B.

Overt Acts

21.    In furtherance of the conspiracy and to effect the illegal object thereof, EMIR BALAT and IBRAHIM KAYUMI, the defendants, and others known and unknown, committed and caused to be committed, among others, the following overt acts, in the Southern District of New York and elsewhere:

a.    In or about February 2026 and March 2026, BALAT purchased components and equipment for building explosive devices, including a butane torch, a 20-foot long fuse, and screws.

b.    In or about March 2026, BALAT built explosive devices containing TATP and shrapnel.

c.    On or about March 7, 2026, BALAT and KAYUMI traveled from Pennsylvania to Manhattan with improvised explosive devices containing TATP and shrapnel.

d.    On or about March 7, 2026, BALAT instructed KAYUMI on how to hold, ignite, aim, and throw an explosive device.

(Title 18, United States Code, Section 2339B.)

**COUNT TWO**
**(Provision and Attempted Provision of Material Support and Resources to a Foreign Terrorist Organization)**

The Grand Jury further charges:

22.    The allegations contained in Paragraphs One through 18 of this Indictment are repeated and realleged as if fully set forth herein.

10

23.     In or about March 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, knowingly provided and attempted to provide, and aided and abetted the provision of, "material support or resources," as that term is defined in Title 18, United States Code, Section 2339A(b), including, among other things, personnel (including themselves) and services, to an FTO, namely, ISIS, which at all relevant times was designated by the United States Secretary of State as an FTO, pursuant to Section 219 of the INA, knowing that ISIS was a designated FTO (as defined in Title 18, United States Code, Section 2339(B)(g)(6)), that ISIS engages and has engaged in terrorist activity (as defined in Section 212(a)(3)(B) of the INA), and that ISIS engages and has engaged in terrorism (as defined in Section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

(Title 18, United States Code, Sections 2339B and 2.)

## COUNT THREE
### (Conspiracy to Use a Weapon of Mass Destruction)

The Grand Jury further charges:

24.     The allegations contained in Paragraphs One through 18 of this Indictment are repeated and realleged as if fully set forth herein.

25.     In or about March 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, and others known and unknown, unlawfully, willfully, and knowingly combined, conspired, confederated, and agreed together and with each other to use a weapon of mass destruction, namely, a destructive device, as defined in Title 18, United States Code, Section 921, against persons and property within the United States, and (a) the mail and facilities of interstate and foreign commerce were used in furtherance of the offense, (b) such property was used in an activity that affects interstate and foreign commerce, (c) the defendants traveled in interstate and foreign commerce in furtherance of the offense, and (d) the

11

offense and the results of the offense affected interstate and foreign commerce, to wit, BALAT and KAYUMI conspired to detonate improvised explosive devices in the vicinity of East End Avenue & East 88th Street in New York, New York, after having traveled to that location from outside of New York State.

(Title 18, United States Code, Section 2332a(a)(2).)

## COUNT FOUR
### (Attempted Use of a Weapon of Mass Destruction)

The Grand Jury further charges:

26.    The allegations contained in Paragraphs One through 18 of this Indictment are repeated and realleged as if fully set forth herein.

27.    On or about March 7, 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, acting without lawful authority, knowingly used and attempted to use a weapon of mass destruction, namely, a destructive device as defined in Title 18, United States Code, Section 921, against persons and property within the United States, and (a) the mail and facilities of interstate and foreign commerce were used in furtherance of the offense, (b) such property was used in an activity that affects interstate and foreign commerce, (c) the defendants traveled in interstate and foreign commerce in furtherance of the offense, and (d) the offense and the results of the offense affected interstate and foreign commerce, to wit, BALAT and KAYUMI possessed and attempted to detonate improvised explosive devices in the vicinity of East End Avenue & East 88th Street in New York, New York, after having traveled to that location from outside of New York State.

(Title 18, United States Code, Sections 2332a(a)(2) and 2.)

12

## COUNT FIVE
### (Carrying of Explosives During the Commission of a Federal Felony)

The Grand Jury further charges:

28.     The allegations contained in Paragraphs One through 18 of this Indictment are repeated and realleged as if fully set forth herein.

29.     On or about March 7, 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, knowingly carried an explosive—to wit, the improvised explosive devices that BALAT and KAYUMI attempted to detonate on or about March 7, 2026 in New York, New York—during the commission of a felony which may be prosecuted in a court of the United States, to wit, the offenses charged in Counts One and Two of this Indictment.

(Title 18, United States Code, Sections 844(h)(2) and 2.)

## COUNT SIX
### (Transportation of Explosive Materials)

The Grand Jury further charges:

30.     The allegations contained in Paragraphs One through 18 of this Indictment are repeated and realleged as if fully set forth herein.

31.     On or about March 7, 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, not being licensees or permittees under the provisions of Chapter 40 of Title 18 of the United States Code, knowingly transported, shipped, caused to be transported, and received, explosive materials.

(Title 18, United States Code, Sections 842(a)(3)(A), 844(a), and 2.)

## COUNT SEVEN
### (Interstate Transportation and Receipt of Explosives)

The Grand Jury further charges:

32.    The allegations contained in Paragraphs One through 18 of this Indictment are repeated and realleged as if fully set forth herein.

33.    On or about March 7, 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, knowingly transported and received, and attempted to transport and receive, in interstate and foreign commerce, an explosive with the knowledge and intent that it would be used to kill, injure, and intimidate any individual and unlawfully to damage and destroy a building, vehicle, and other real and personal property, to wit, BALAT and KAYUMI transported improvised explosive devices in interstate commerce, and attempted to detonate and throw into a crowd an improvised explosive device in the vicinity of East End Avenue & East 88th Street in New York, New York.

(Title 18, United States Code, Sections 844(d) and 2.)

## COUNT EIGHT
### (Unlawful Possession of Destructive Devices)

The Grand Jury further charges:

34.    The allegations contained in Paragraphs One through 18 of this Indictment are repeated and realleged as if fully set forth herein.

35.    On or about March 7, 2026, in the Southern District of New York and elsewhere, EMIR BALAT and IBRAHIM KAYUMI, the defendants, unlawfully and knowingly possessed a firearm, namely, a destructive device, as described in Title 26, United States Code, Section

14

5845(a)(8) and (f), not registered to the defendants in the National Firearms Registration and Transfer Record.

(Title 26, United States Code, Sections 5861(d) and 5871;
Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATIONS

36.    As a result of committing the offenses alleged in Counts One through Four of this Indictment, EMIR BALAT and IBRAHIM KAYUMI, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and 981(a)(1)(G) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to the commission of said offenses; any and all assets, foreign and domestic, of the defendants; any and all assets, foreign and domestic, affording the defendants a source of influence over any entity or organization engaged in planning or perpetrating said offenses; any and all assets, foreign and domestic, acquired or maintained with the intent and for the purpose of supporting, planning, conducting or concealing said offenses; any and all assets, foreign and domestic, derived from, involved in, or used or intended to be used to commit said offenses, including but not limited to a sum of money in United States currency representing the total amount of proceeds traceable to the commission of the offenses and the defendants' assets.

37.    As a result of committing the offense alleged in Count Five of this Indictment, EMIR BALAT and IBRAHIM KAYUMI, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any and all property constituting, or derived from, proceeds obtained directly or indirectly as a result of the offense, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offense, and pursuant to Title 18, United States Code, Section

15

844(c)(1), any explosive materials involved or used or intended to be used in any violation of Title 18, United States Code, Section 844.

38.    As a result of committing the offenses alleged in Counts Six and Seven of this Indictment, EMIR BALAT and IBRAHIM KAYUMI, the defendants, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2)(B), any and all property constituting, or derived from, proceeds obtained directly or indirectly as a result of the offenses, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses, and pursuant to Title 18, United States Code, Section 844(c)(1), any explosive materials involved or used or intended to be used in any violation of Title 18, United States Code, Section 844.

39.    As a result of committing the offense alleged in Count Eight of this Indictment, EMIR BALAT and IBRAHIM KAYUMI, the defendants, shall forfeit to the United States, pursuant to Title 26, United States Code, Section 5872, and Title 28, United States Code, Section 2461, any and all firearms involved in said offense.

## Substitute Assets Provision

40.    If any of the above-described forfeitable property, as a result of any act or omission of EMIR BALAT and IBRAHIM KAYUMI, the defendants:

  a. cannot be located upon the exercise of due diligence;

  b. has been transferred or sold to, or deposited with, a third person;

  c. has been placed beyond the jurisdiction of the Court;

  d. has been substantially diminished in value; or

  e. has been commingled with other property which cannot be subdivided without difficulty;

16

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and

Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the

defendants up to the value of the above forfeitable property.

(Title 18, United States Code, Sections 844, 981, and 982;
Title 21, United States Code, Section 853;
Title 26, United States Code, Section 5872; and
Title 28, United States Code, Section 2461.)

FOREPERSON

JAY CLAYTON
United States Attorney

17